APPEAL NO. 14-4477

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

*versus*

CHARLES TARRON CARTER,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

BRIEF OF APPELLEE

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

STACEY D. HAYNES
ASSISTANT U.S. ATTORNEY
1441 MAIN STREET, SUITE 500
COLUMBIA, SC 29201
TEL. (803) 929-3000
Stacey.Haynes@usdoj.gov

ATTORNEYS FOR APPELLEE

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ...................................................1

STATEMENT OF THE ISSUE..............................................................1

STATEMENT OF THE CASE.................................................................1

STATEMENT OF THE FACTS ............................................................2

SUMMARY OF THE ARGUMENTS ..................................................6

ARGUMENTS ........................................................................................7

    I.    The district court correctly applied the armed career criminal enhancement to Carter based upon his prior second degree burglary and serious drug offense convictions.......................................................................7

        A.    Standard of Review...................................................7

        B.    Statutory and Legal Framework.................................7

        C.    A prior conviction under § 16-11-312(A) categorically qualifies as a violent felony under the enumerated offenses clause of the Armed Career Criminal Act.............................................................10

        D.    A conviction under § 16-11-312(A) is categorically a violent felony under the residual clause...........................................................................11

i

**PAGE**

1.    South Carolina's second degree burglary offense creates a serious risk of injury to another that is similar to generic burglary ....................13

2.    A § 16-11-312(A) offense is "roughly similar" to the crime of generic burglary ......................18

II.    Counsel was not ineffective for failing to challenge Carter's status as an armed career criminal..........................................19

A.    Standard of Review...................................................19

B.    Legal Framework ....................................................20

CONCLUSION................................................................................22

STATEMENT WITH RESPECT TO ORAL ARGUMENT ................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL CASES</u>                                    <u>PAGE</u>

<u>Begay v. United States</u>, 553 U.S. 137 (2008) ....................................................11, 13

<u>Honeycutt v. Mahoney</u>, 698 F.2d 213 (4th Cir. 1983)............................................21

<u>James v. United States</u>, 550 U.S. 192 (2007) .................................12, 13, 15, 16, 17

<u>Kornahrens v. Evatt</u>, 66 F.2d 1350 (4th Cir. 1995) ...................................................21

<u>Moss v. Ballard</u>, 537 Fed.Appx. 191 (4th Cir. 2013) ...............................................21

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984)........................................................20

<u>Sykes v. United States</u>,131 S. Ct. 2267 (2011)...................................................11, 12

<u>Taylor v. United States</u>, 495 U.S. 575 (1990)........................................8, 10, 12, 16

<u>United States v. Baldovinos</u>, 434 F.3d 233 (4th Cir. 2006)......................................19

<u>United States v. Brown</u>, 514 F.3d 256 (2d Cir. 2008) ..............................................15

<u>United States v. Brown</u>, __Fed.Appx.__, 2015 WL 1219648 (2015) ...............11, 21

<u>United States v. Cantrell</u>, 530 F.3d 684 (8th Cir. 2008) ...........................................15

<u>United States v. DeFusco</u>, 949 F.2d 114 (4th Cir. 1991)..........................................19

<u>United States v. Henriquez</u>, 757 F.3d 144 (4th Cir. 2014) ........................................8

<u>United States v. King</u>, 119 F.3d 290 (4th Cir. 1997)................................................19

<u>United States v. Martin</u>, 753 F.3d 485 (4th Cir. 2014) .......................................11, 14

<u>United States v. McNamara</u>, 74 F.3d 514 (4th Cir. 1996)........................................21

**PAGE**

United States v. Muhammad, 478 F.3d 247 (4th Cir. 2007) .......................7

United States v. Mungro, 754 F.3d 267 (4th Cir. 2014) ...........................14

United States v. Olano, 507 U.S. 725 (1993) ............................................7

United States v. Phillips, 752 F.3d 1047 (6th Cir. 2014).........................17

United States v. Ruhe, 191 F.3d 376 (4th Cir. 1999) ...............................10

United States v. Sanchez-Ramirez, 570 F.3d. 75 (1st Cir. 2009)............17

United States v. Terrell, 593 F.3d 1084 (9th Cir. 2010) ..........................15

United States v. Vonn, 535 U.S. 55 (2002) ...............................................7

United States v. Wright, 594 F.3d 259 (4th Cir. 2010).....................6, 10, 20, 21, 22

**STATE CASES**

Padgett v. State, 484 S.E.2d 101 (S.C. 1997) ..........................................14

State v. Ferebee, 257 S.E.2d 154 (S.C. 1979)..........................................13

State v. Middleton, 626 S.E.2d 74 (S.C. Ct. App. 2006)........................16

State v. Myers, 438 S.E.2d 236 (S.C. 1993) ...........................................14

State v. Singley, 679 S.E.2d 538 (S.C. Ct. App. 2009) ..........................18

State v. Stone, 567 S.E.2d  244 (S.C. 2002) ...........................................16

State v. White, 562 S.E.2d 305 (S.C. 2002) ............................................16

iv

**FEDERAL STATUTES**                                                      **PAGE**

Title 18, United States Code, Section 922(g)(1)....................................................1, 4

Title 18, United States Code, Section 924(a)(2)....................................................1, 4

Title 18, United States Code, Section 924(c).........................................1, 4, 5, 20, 21

Title 18, United States Code, Section 924(e).........................................1, 2, 4, 5, 7, 8

Title 18, United States Code, Section 924(e)(2)(B)(ii)................................8, 11, 12

Title 18, United States Code, Section 3231 ........................................................1

Title 18, United States Code, Section 3742(a)........................................................1

Title 21, United States Code, Section 841(a)(1)....................................................1, 4

Title 21, United States Code, Section 841(b)(1)(C) ............................................1, 4

Title 28, United States Code, Section 1291 ........................................................1

**OTHER AUTHORITIES**

S.C. Code Ann. § 16-11-10................................................................................9

S.C. Code Ann. § 16-11-310(1) ......................................................................10

S.C. Code Ann. § 16-11-310(2) ........................................................................9

S.C. Code Ann. § 16-11-312(A) .......................... 6, 9, 10, 11, 13, 14, 15, 18, 19, 22

S.C. Code Ann. § 16-11-312(B) ........................................................................9

v

# STATEMENT OF SUBJECT MATTER
# AND APPELLATE JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to Title 18, United States Code, Section 3231. This Court has jurisdiction under Title 18, United States Code, Section 3742(a) and Title 28, United States Code, Section 1291.

# STATEMENT OF THE ISSUE

Whether Charles Tarron Carter's ("Carter") three prior South Carolina convictions for second degree burglary qualify as "violent felon[ies]" under the Armed Career Criminal Act ("ACCA").

# STATEMENT OF THE CASE

On August 21, 2012, a federal grand jury in the District of South Carolina returned a sealed three-count superseding indictment charging Carter with being a felon in possession of a firearm and ammunition, possession with intent to distribute a quantity of crack cocaine, and possession of a firearm in furtherance of a drug trafficking crime, all in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), 924(c), and 924(e) and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C). JA 4, 9-13. Carter remained a fugitive until his arrest on August 20, 2013. JA 4, 80, 114.

1

On February 10, 2014, an information was filed notifying Carter that he faced enhanced penalties under Title 18, United States Code, Section 924(e). JA 6, 14-17, 56. On March 4, 2014, Carter pled guilty to Count 1 of the superseding indictment pursuant to a plea agreement. JA 6, 18-31, 32-67.

On June 3, 2014, the district court sentenced Carter to 188 months imprisonment with five years of supervised release. JA 7, 68-90, 91-96. This timely appeal followed. JA 102. Thereafter, the Government filed a motion to dismiss based upon the appeal waiver contained in the plea agreement. This Court denied the motion to dismiss on February 23, 2015, and reinstated the briefing schedule.

## STATEMENT OF THE FACTS

On June 29, 2011, officers with the Columbia Police Department responded to a burglary alarm at a residence on Muller Avenue. JA 54, 112. Officers found a door to the residence, as well as a door to a structure behind the residence, ajar. JA 54, 112. While checking for intruders, officers noticed a quantity of crack cocaine and a Smith & Wesson .45 caliber handgun in plain view, along with an identification card and prescription bottle belonging to Carter, who utilized the rear building. JA 54, 62, 112. Carter arrived at the residence while officers were there

2

and he, after waiving his rights, advised that he lived in the main house with his grandmother and spent time in the rear building.  JA 54-55, 112-113.

Carter's grandmother also arrived at the scene and told officers that Carter did not live in the main house with her, but did spend time in the rear building on occasion.  JA 55, 113.  Carter's grandmother provided consent to search the rear building and thereafter, officers located a digital scale, two loaded pistol magazines, a glass Pyrex measuring cup, boxes of .45 caliber, .40 caliber, and .38 caliber ammunition, a black banana-clip rifle magazine, multiple zip-lock baggies, $500 in cash hidden in the ceiling rafters, a cell phone, and various documents pertaining to Carter.  JA 55, 113.

Carter was arrested on state charges and after again waiving his rights, advised that he sold crack cocaine, used the Pyrex cup to cook crack cocaine, and that the gun and rifle magazine belonged to him.  JA 55, 113.  Thereafter, Carter, on recorded jail calls to a female, admitted to leaving the gun on the table when he left the house, that he was a three-time felon and couldn't have a gun, that he was worried the case may go federal, that officers found the "chopper" clip (meaning high capacity magazine for assault rifle), and that that officers didn't find all of the "work" (meaning crack cocaine) he had in the house.  JA 55-56, 113.

Carter was prohibited under federal law from possessing firearms and/or ammunition based upon his extensive prior record. Carter, who was under state supervision at the time of this instant offense, had previously been convicted in state court for three separate second degree burglaries of dwellings, possession with intent to distribute crack cocaine, and possession with intent to distribute cocaine. JA 56, 114, 116-119.

Carter was indicted by a federal grand jury in July 2012 on drug and firearm charges and the indictment was sealed while officers attempted to locate Carter, who had made bond on the state charges. JA 3, 108. Thereafter, a sealed three-count superseding indictment was returned on August 21, 2012, charging Carter with being a felon in possession of a firearm and ammunition, possession with intent to distribute a quantity of crack cocaine, and possession of a firearm in furtherance of a drug trafficking crime, all in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), 924(c), and 924(e) and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C). JA 4, 9-13. Carter remained a fugitive until his arrest on August 20, 2013. JA 4, 80, 114. On February 10, 2014, an information was filed notifying Carter that he faced enhanced penalties under Title 18, United States Code, Section 924(e). JA 6, 14-17, 56.

On March 4, 2014, Carter pled guilty, pursuant to a plea agreement, to being a felon in possession of a firearm and ammunition. JA 6, 18-31, 32-67. In exchange for dismissal of the state charges and the remaining federal charges, including a charge for Title 18, United States Code, Section 924(c), which carried consecutive time, Carter stipulated to being an armed career criminal under Title 18, United States Code, Section 924(e). JA 18-31, 47-49.

In the presentence investigation report ("PSR"), the probation officer recommended that Carter be sentenced as an armed career criminal based on his five prior qualifying predicate convictions; specifically, three separate prior South Carolina felony convictions for second degree burglary, a prior conviction for possession with intent to distribute cocaine, and a prior conviction for possession with intent to distribute crack cocaine. JA 116-119, 121-122. During the sentencing hearing, defense counsel did not object to Carter's designation as an armed career criminal, but did file a motion for an eight month variance down to the statutory mandatory minimum sentence. JA 70-73. The district court denied the variance motion in light of Carter's prior record and his having committed the instance offense while still on state supervision. JA 81- 83. The district court adopted the PSR's findings of fact and Guidelines calculation. JA 70, 81-87. The

5

district court sentenced Carter to 188 months imprisonment with five years of supervised release to follow. JA 7, 81-87, 91-96. This appeal followed. JA 102.

## SUMMARY OF ARGUMENTS

The district court did not commit error when it determined that Carter's three separate prior convictions for second degree burglary under South Carolina Code Ann. § 16-11-312(A) qualify as predicate offenses for application of the ACCA enhancement. Carter's claims on appeal are foreclosed by United States v. Wright, 594 F.3d 259 (4th Cir. 2010), in which this Court determined that a conviction under South Carolina Code Ann. § 16-11-312(A) categorically qualifies as a violent felony under the ACCA's enumerated offenses clause. Even if this Court were to determine that it is not bound by Wright, a prior conviction for second degree burglary under South Carolina Code Ann. § 16-11-312(A) constitutes a violent felony under the residual clause of the ACCA because the offense involves the same risks of confrontation and physical injury as generic burglary. Additionally, in light of Wright, the record does not conclusively show that counsel was ineffective for failing to challenge Carter's status as an armed career criminal.

<u>**ARGUMENTS**</u>

**I.    THE DISTRICT COURT CORRECTLY APPLIED THE ARMED CAREER CRIMINAL ENHANCEMENT TO CARTER BASED UPON HIS PRIOR SECOND DEGREE BURGLARY CONVICTIONS AND SERIOUS DRUG OFFENSE CONVICTIONS.**

**A.    Standard of Review**

Carter did not raise this issue before the district court.  Therefore, the standard of review is for plain error.  <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993).  In order to prevail under the plain error standard of review, Carter must (1) identify an error (2) which is plain (*i.e.*, clear or obvious) (3) which seriously affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of the judicial proceedings. <u>United States v. Muhammad</u>, 478 F.3d 247, 249 (4th Cir. 2007). Carter bears the burden of satisfying each of the elements of the plain error standard.  <u>United States v. Vonn</u>, 535 U.S. 55, 59 (2002).

**B. Statutory and Legal Framework**

The ACCA imposes a fifteen-year mandatory minimum sentence if the defendant has three prior convictions for a "violent felony" and/or a "serious drug offense."  18 U.S.C. § 924(e).  For purposes of this appeal, Carter does not contest that his two prior separate convictions for possession with intent to distribute cocaine and possession with intent to distribute crack cocaine each qualify as a

"serious drug offense" for purposes of Section 924(e).  Carter only contests his three prior separate second degree burglary convictions.

The term "violent felony" is defined under the ACCA as any crime punishable by imprisonment for a term exceeding a year that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  For purposes of § 924(e), the Supreme Court has adopted an expansive definition of burglary to effectuate Congress's intent to broaden the category of offenses that qualify as ACCA predicate offenses, defining it according to its generic meaning, which is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990).  The generic definition does not require that the burglar be armed, that the building or structure be occupied, or that force be involved.  Id. at 597.  However, statutes that define burglary so as to include an unlawful entry into an automobile or any place other than a building or structure are broader than the generic definition, and, consequently, do not fall within the enumerated offenses clause of the ACCA.  See United States v. Henriquez, 757 F.3d 144, 147 (4th Cir. 2014).

8

The prohibitory provision of South Carolina's second degree burglary statute provides, in relevant part, that a "person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein."[1]  S.C. Code Ann. § 16-11-312(A).  The term "dwelling" is defined in § 16-11-310(2) and "means its definition found in § 16-11-10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person."  Section 16-11-10, in turn, defines "dwelling house" as follows:

> any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it.

Finally, "building" includes "any structure, vehicle, watercraft or aircraft" wherein "any person lodges of lives" or a place "[w]here people assemble for purposes of

---

[1] The second degree burglary statute contains a separate section that concerns burglary of a building.  See S.C. Code Ann. § 16-11-312(B).  That part of the statute is not at issue in this appeal because Carter's prior convictions were under § 16-11-312(A), which involves entry into a dwelling.  JA 116-117.

business, government, education, religion, entertainment, public transportation, or public use or where goods are stored." S.C. Code Ann. § 16-11-310(1).

### C. A prior conviction under § 16-11-312(A) categorically qualifies as a violent felony under the enumerated offenses clause of the ACCA.

Carter's claim of error by the district court is foreclosed by binding precedent. In United States v. Wright, 594 F.3d 259 (4th Cir. 2010), this Court considered whether a prior conviction under S.C. Code Ann. § 16-11-312(A) qualified as a violent felony under the ACCA. The Court observed that the language of § 16-11-312(A) "tracks the generic definition of burglary set forth by the Supreme Court in Taylor," and concluded that "we have no difficulty determining that South Carolina's burglary statute falls within the ACCA's list of prior offenses." Id. at 266. Because this Court has already determined that a prior conviction under § 16-11-312(A) categorically qualifies as a violent felony under the ACCA and Carter has failed to identify any Supreme Court or en banc decision that explicitly or implicitly overturns Wright, the Court should affirm the district court's determination that Carter's three prior second degree burglary convictions qualify as violent felonies. See United States v. Ruhe, 191 F.3d 376, 388 (4th Cir. 1999) ("[A]s a simple panel, we are bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision."); see

10

also <u>United States v. Brown</u>, __Fed.Appx.__, 2015 WL 1219648 (2015)(upholding ACC status based upon predicate conviction under S.C. Code Ann. §16-11-312(A)).

**D.    A conviction under § 16-11-312(A) is categorically a violent felony under the residual clause.**

The district court did not err in determining that Carter's three prior second degree burglary convictions qualify as ACCA predicate offenses because § 16-11-312(A) categorically falls within the residual clause of the ACCA.   A prior conviction fits within the residual clause if it (1) "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. §  924(e)(2)(B)(ii), and (2) is "roughly similar" to one of the enumerated offenses in that the prior conviction "typically involve[s] purposeful, violent, and aggressive conduct," <u>Begay v. United States</u>, 553 U.S. 137, 144-45 (2008) (internal quotation marks omitted); <u>United States v. Martin</u>, 753 F.3d 485, 488-90 (4th Cir. 2014) (explaining that <u>Begay</u>'s similar-in-kind requirement remains applicable to the residual clause analysis following <u>Sykes v. United States</u>, 131 S. Ct. 2267 (2011)).   Although courts in this Circuit employ a categorical approach to determine whether a prior conviction fits within the residual clause, <u>Martin</u>, 753 F.3d at 488, the Supreme Court has made clear that not "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense

11

can be deemed a violent felony." <u>James v. United States</u>, 550 U.S. 192, 208 (2007). Rather, the proper inquiry focuses upon "whether the conduct encompassed by the elements of the offense, <u>which in the ordinary case</u>, present a serious potential risk of injury to another." <u>Id.</u> (emphasis added). Further, the degree of risk presented need only be comparable to, not equal or greater than, generic burglary:

> What the [ACCA's residual] clause demands is a serious potential risk of physical injury to another. While it may be reasonable to infer that the risks presented by the enumerated offenses involve a risk of this magnitude, it does not follow that an offense that presents a lesser risk necessarily fails to qualify. Nothing in the language of § 924(e)(2)(B)(ii) rules out the possibility that an offense may present "a serious risk of potential physical injury to another" without presenting as great a risk as any of the enumerated offenses.

<u>Id</u>. at 209 (internal citations omitted).

Generic burglary poses an "inherent potential for harm to persons." <u>Taylor</u>, 495 U.S. at 588; <u>see also</u> <u>Sykes</u>, 131 S. Ct. at 2273 ("Burglary is dangerous because it can end in confrontation leading to violence."). Indeed, "[t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." <u>Id.</u> Accordingly, generic burglary as a matter of law involves purposeful, violent, and aggressive "conduct that presents a

12

serious potential risk of physical injury to another."  <u>Begay</u>, 553 U.S. at 144-45.  In

<u>James</u>, the Supreme Court addressed whether a conviction for attempted burglary

qualifies as a violent felony under the ACCA.  Applying the residual clause to

Florida's attempted-burglary statute—which does not require entry into a

structure—the Court concluded that the offense qualifies as a violent felony

because it presents a similar risk to generic burglary.  "Interrupting an intruder at

the doorstep while the would-be burglar is attempting a break-in," the Court

observed, "creates a risk of violent confrontation comparable to that posed by

finding him inside the structure itself."  <u>Id.</u> at 203.

### 1. South Carolina's second degree burglary offense creates a serious risk of injury to another that is similar to generic burglary.

A conviction for second degree burglary under § 16-11-312(A) constitutes a

violent felony under the residual clause because the offense involves the same risks

of confrontation and physical injury as generic burglary.  Although the South

Carolina second degree burglary statute broadly defines the term "dwelling" to

conceivably include a vehicle, watercraft, or aircraft, a conviction under § 16-11-

312(A) is similar both in kind as well as in degree of risk posed to generic burglary

because the Supreme Court of South Carolina has narrowly interpreted the

dwelling element as "requiring that an identifiable occupant reside and sleep within

the dwelling."  <u>State v. Ferebee</u>, 257 S.E.2d 154, 155 (S.C. 1979) (describing

13

burglary as "an offense against habitation rather than against property" and holding that a vacant apartment unit is not a dwelling house for purposes of the burglary statute when it was abandoned a week prior to the alleged burglary); see also Padgett v. State, 484 S.E.2d 101, 104 n.2 (S.C. 1997) (unoccupied barn does not constitute dwelling within the meaning of the burglary statutes); State v. Myers, 438 S.E.2d 236, 237 (S.C. 1993) (holding that "the definition of 'dwelling house' is broad enough to include a boat in which a person lodges" (emphasis added)).[2] Thus, "the mere fact that a building is suitable for use as a dwelling is insufficient" to satisfy the dwelling element. Id. By limiting the statutory definition of "dwelling" to include only places that are inhabited, and, necessarily, either occupied or likely to be occupied, the risk of physical confrontation resulting from a burglar's entry into these structures is comparable to that posed by a burglar's entry into a generic building or structure. See Martin, 753 F.3d at 491-93 (holding that fourth-degree burglary offense under Maryland law presents the same risk of confrontation as generic burglary because it applies only to dwellings likely to be occupied). Indeed, numerous other circuits have held that convictions under

---

[2] The South Carolina Supreme Court's narrow construction of the dwelling element is binding for purposes of determining whether § 16-11-312(A) constitutes a violent felony under the ACCA. See United States v. Mungro, 754 F.3d 267, 270 (4th Cir. 2014) (state supreme court's construction of elements in a statute binds a federal court's ACCA analysis).

14

burglary statutes that include entry into vehicles, aircrafts, and other movable structures constitute violent felonies under the residual clause even absent a habitation requirement.  See, e.g., United States v. Terrell, 593 F.3d 1084, 1093-94 (9th Cir. 2010); United States v. Cantrell, 530 F.3d 684, 695-96 (8th Cir. 2008); United States v. Brown, 514 F.3d 256, 268 (2d Cir. 2008).

Further, § 16-11-312(A) does not fall outside the scope of the residual clause simply because the definition of "dwelling house" includes "all houses, outhouses, buildings, sheds and erections which are within two hundred yards" of an inhabited building.  In James, the Supreme Court considered whether convictions under Florida's attempted-burglary statute, which defined "[d]welling" as including both the "structure" and the "curtilage thereof," qualify as violent felonies under the ACCA's residual clause.  550 U.S. at 213.  Although the defendant in James claimed that attempted burglary of the curtilage of a structure ameliorated the risk of confrontation that is inherent in generic burglary, the Court rejected this argument, reasoning that "a burglar who illegally attempts to enter the enclosed area surrounding a dwelling creates much the same risk of physical confrontation with a property owner, law enforcement official, or other third party as does one who attempts to enter the structure itself."  Id.  Because attempting to enter the curtilage of a structure "requires both physical proximity to the structure and an

15

overt act directed toward breaching the enclosure," the Court concluded that it "presents a serious potential risk that violence will ensue and someone will be injured." Id. If the risk of violence from an uncompleted burglary in which no entry of the curtilage of a structure actually occurs is sufficient to satisfy the residual clause, it follows that risk in a completed burglary of a structure's curtilage is also sufficient.

It is important to note that the Supreme Court has squarely rejected the proposition that burglary may qualify as a violent felony under the residual clause only if it fits within the generic definition of burglary, explaining that the residual clause may "cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary." James, 550 U.S. at 212; Taylor, 495 U.S. at 600 n.9 ("The Government remains free to argue that any offense -- including offenses similar to generic burglary --should count towards enhancement [under the residual clause].").   Further, it is not necessary for "every conceivable factual offense covered by a statute" to present a serious potential risk of physical injury. James, 550 U.S. at 208.  Additionally, most of the cases applying the dwelling element of the South Carolina burglary statutes involve places that are occupied, or likely to be occupied, by people.  See, e.g., State v. Stone, 567 S.E.2d 244, 246-47 (S.C. 2002) (fully enclosed screened porch is a dwelling within the meaning of burglary

16

statute); <u>State v. White</u>, 562 S.E.2d 305, 307-08 (S.C. 2002) (regularly occupied motel room qualifies as dwelling); <u>State v. Middleton</u>, 626 S.E.2d 74, 75-76 (S.C. Ct. App. 2006) (crawl space underneath an office building and concealed but for an opening with a metal cover was part of the curtilage of the building and satisfied dwelling element because it was "an integral part of the structure of the building").

The Supreme Court has emphasized that the risk of face-to-face confrontation inherent with generic burglary extends not only to the occupant of a building, but also to some intervening third party, such as a police officer or bystander, who comes to investigate. <u>See</u> <u>James</u>, 550 U.S. at 203 (observing that the "risk arises not from completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress"). The risk of confrontation and that violence will ensue apply with equal force to unoccupied structures located within a mere two-hundred yards of an inhabited building. <u>See</u> <u>United States v. Phillips</u>, 752 F.3d 1047, 1050-51 (6th Cir. 2014) (rejecting the argument that "removing occupants from the equation so diminishes the potential risk of injury that this is no longer a crime of violence"); <u>United States v. Sanchez-Ramirez</u>, 570 F.3d 75, 82-83 (1st Cir. 2009) (holding that a Florida conviction involving the burglary of an unoccupied, uninhabited church and the curtilage thereof qualified as a violent felony under the residual clause). Because second

17

degree burglary under § 16-11-312(A) involves the same risks of confrontation and physical injury as generic burglary, it categorically fits within the residual clause of the ACCA.

### 2.    A § 16-11-312(A) offense is "roughly similar" to the crime of generic burglary.

A conviction under § 16-11-312(A) is "roughly similar" to the enumerated crime of generic burglary because it involves conduct that is "purposeful, violent, and aggressive."  A defendant can be convicted of § 16-11-312(A) only if the State proves that the defendant entered a dwelling "with intent to commit a crime therein."  As a specific intent crime, second degree burglary is—by definition—purposeful.  Further, second degree burglary involves aggressive conduct because the burglar typically commits the crime in the "sanctity of one's home" where "peace, solitude, and safety are most desired and expected."  State v. Singley, 679 S.E.2d 538, 540 (S.C. Ct. App. 2009).  And, as explained above, second degree burglary usually presents a serious potential risk of violent confrontation, inflicted by either a burglar during the commission of his crime, or a victim or some other third party may employ force to prevent it.

As outlined above, second degree burglary under § 16-11-312(A) categorically poses a potential risk of injury both to the occupants present in the dwelling at the time of the burglary as well as individuals in the area surrounding

18

the dwelling if a confrontation occurs.  Therefore, in the ordinary case, second degree burglary involves conduct that presents a serious potential risk of physical injury to another, like that of generic burglary.  Accordingly, a conviction under South Carolina Code Ann. § 16-11-312(A) categorically qualifies as a violent under the ACCA's residual clause.

In light of the aforementioned, Carter has failed to satisfy his burden as there was no clear or obvious error by the district court that seriously affected his substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  The district court did not err as it applied the armed career criminal enhancement in accordance with the current law of the land.

## II.   COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE CARTER'S STATUS AS AN ARMED CAREER CRIMINAL.

### A.  Standard of Review

Claims of ineffectiveness of counsel may be addressed on direct appeal only if the ineffectiveness appears conclusively on the face of the record. United States v. King, 119 F.3d 290, 295 (4th Cir. 1997); United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006); and United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

## B.     Legal Framework

Carter argues that counsel was ineffective for failing to challenge his status as an armed career criminal and for allowing him to stipulate to being an armed career criminal in his plea agreement.  Carter's allegations are without merit.  To establish a violation of the Sixth Amendment due to ineffective assistance of counsel, Carter must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

In light of the Court's opinion in Wright and for the reasons set forth in Section I above, the record does not conclusively establish that the performance of Carter's counsel was deficient or prejudicial.  Additionally, as set forth earlier, counsel negotiated a favorable plea agreement for Carter, which included dismissal of pending state charges, as well as dismissal of a charge under Title 18, United States Code, Section 924(c), which would carry a consecutive term of imprisonment, and dismissal of a drug charge.  It is important to note that, even without counting his prior burglary convictions, had he been convicted of those additional charges, Carter would have also been a career offender based upon his prior drug convictions.  Thus, the plea agreement in which Carter stipulated to his status as an armed career criminal was beneficial to Carter as it resulted in the

20

dismissal of a consecutive Section 924(c) charge, dismissal of a drug charge, and dismissal of state charges, in addition to the ability to earn a sentence reduction based upon cooperation.

As set forth in Section I, counsel cannot be found to be ineffective for not challenging the finding that Carter's prior second degree burglary convictions were "violent felonies" under the ACCA when South Carolina's second degree burglary offense had, at the time of sentencing, been found to be a violent felony in Wright. "It is well established that an attorney cannot be labeled ineffective for failing to anticipate a future change in the law." Moss v. Ballard, 537 Fed.Appx. 191, 195 (4th Cir. 2013); See United States v. McNamara, 74 F.3d 514, 516–17 (4th Cir. 1996); Honeycutt v. Mahoney, 698 F.2d 213, 217 (4th Cir.1983).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir.1995), this Court concluded that Kornahrens' trial counsel was not constitutionally deficient "because he followed a long-standing and well-settled rule of South Carolina criminal law-even when that rule was under attack in the United States Supreme Court at the time of trial." Id. at 1360. In the same way, trial counsel in the present case followed a long-standing and well-settled rule that second degree burglary qualified as a violent felony. No court had ruled otherwise at the time of Defendant's sentencing, nor has this Court overturned the Wright decision. See Brown,

21

__Fed.Appx.__, 2015 WL 1219648 (2015)(citing Wright in upholding ACC status based upon predicate conviction under S.C. Code Ann. §16-11-312(A)). Evaluated in light of the circumstances of the representation at the time and because perfection is not required to defeat a claim of ineffective assistance, it cannot be said that the record conclusively shows that trial counsel's actions fell outside the wide range of reasonable professional assistance.  Accordingly, this Court should find that the record does not conclusively establish that the performance of Carter's counsel was deficient or prejudicial.

## **CONCLUSION**

For the above reasons, the Government respectfully requests that this Court affirm Carter's sentence.

## <u>STATEMENT WITH RESPECT TO ORAL ARGUMENT</u>

The United States respectfully suggests that oral argument is not necessary in this case. The facts and legal issues are adequately presented in the materials before the Court and oral argument likely would not aid the Court in reaching its decision.

Respectfully submitted,

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

By: <u>s/Stacey D. Haynes</u>
Stacey D. Haynes
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Tel. (803) 929-3000
Stacey.Haynes@usdoj.gov

March 26, 2015

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. <u>14-4477</u>          Caption: <u>United States v. Charles Tarron Carter</u>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)</u>

1.    **Type-Volume Limitation:**  Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count.  Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 281(c)(2) or 32(a)(7)(B) because:

⊠        this brief contains <u>4,864</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

⊠        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> in <u>Times New Roman 14</u>.

<u>s/Stacey D. Hayes</u>
Attorney for the United States of America
Dated:  March 26, 2015

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,   )    NO. 14-4477
            )
         Appellee,   )
            )
       v.         )
            )
CHARLES TARRON CARTER   )
            )
        Appellant   )    CERTIFICATE OF SERVICE

I certify that on March 26, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the address listed below:

Steven M. Hisker, Esquire
Hisker Law Firm, PC
126 East Main Street
Duncan, South Carolina 29334
SteveHisker@bellsouth.net

s/Stacey D. Haynes
Stacey D. Haynes
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201-2692
Tel. (803) 929-3000